969 So.2d 793 (2007)
Phoebe M. HUDSPETH, Plaintiff-Appellant
v.
James G. SMITH, Attorney and Carol D. Powell-Lexing, Attorney, Defendant-Appellee.
No. 42,647-CA.
Court of Appeal of Louisiana, Second Circuit.
November 7, 2007.
*794 Phoebe Marcella Hudspeth In Proper Person.
James Garland Smith, In Proper Person.
Sir Clyde Lain, II, Monroe, for Appellee Carol D. Powell-Lexing.
Before BROWN, GASKINS and DREW, JJ.
DREW, J.
This appeal arises from an action brought by plaintiff, Phoebe M. Hudspeth, against her attorneys, James G. Smith and Carol D. Powell-Lexing, alleging negligence, theft, breach of fiduciary duty, misrepresentation, and breach of contract. Powell-Lexing was dismissed with prejudice in a September 18, 2006, judgment sustaining an exception of no cause of action based on lack of an attorney-client relationship between Powell-Lexing and Hudspeth. Subsequently, in a September 21, 2006, judgment, the trial court dismissed Hudspeth's claims against Smith. Hudspeth filed a motion to appeal this latter judgment, and the trial court determined the motion to be timely. For the following reasons, we affirm the trial court's judgment.

FACTS
Hudspeth was employed for a short period of time as a Regional Human Resources Manager for Spectra Communications in Missouri. On November 3, 2000, Spectra fired her, and on May 4, 2001, she filed a claim with the EEOC alleging racial discrimination. She later filed suit against Spectra Communications Group, L.L.C., in the federal court for the Western District of Missouri. Hudspeth alleged that she had suffered disparate treatment because of her race and gender, a hostile work environment because of her race, and retaliation. In January of 2003, the federal district court dismissed Hudspeth's lawsuit *795 on Spectra's motion for summary judgment. The dismissal was affirmed in an unpublished opinion. Hudspeth v. Spectra Communications Group, L.L.C., 83 Fed. Appx. 145 (8th Cir.2003).
In January 2005, Hudspeth wrote two letters to Smith to see if he would provide legal representation for her in litigation related to her former employment. Smith indicated in the letters that CenturyTel, together with Spectra Communications, had intentionally defrauded and taken advantage of her, that they misled her into believing that Spectra was her employer, and that as a result of the deception she had neglected to name CenturyTel in her initial legal action.[1] Later that month, Hudspeth and Smith met at a restaurant to discuss Hudspeth's interest in pursuing a lawsuit against CenturyTel. Hudspeth wanted Smith to find a way to sue CenturyTel. According to Smith, he indicated that he would be glad to investigate and consider representing Hudspeth, and that his hourly rate was $150. Smith denied being willing to take the case on a contingency basis. Hudspeth denied that Smith told her his hourly rate, and indicated that Smith had orally offered her a contingency contract.
In March 2005, Hudspeth wrote Smith two more letters. The first acknowledged their meeting and indicated that enclosed were a number of "file documents," including among other things, complaints filed in the initial litigation, a motion for and opposition to summary judgment, and a district court order as well as an appellate court decision. The second letter indicated that it enclosed "additional file documents to aid in your review," but did not further identify the documents. Both letters bore a caption indicating that they were regarding "Potential Employment/Torts Litigation based on Equitable Tolling."
In April, Hudspeth sent Smith a certified letter with the same caption, asking if he had received her "numerous telephone voicemail messages" and indicating that she had tried to communicate numerous times via voicemails and written correspondence. She asked Smith to inform her whether "we still need to meet or move forward with processing."
In May, Hudspeth met with Smith and Powell-Lexing. At that time, Hudspeth gave Smith a check for $1,000 as a retainer. Smith endorsed the check over to Powell-Lexing. Smith testified that the money was not adequate to cover the work already done, and that because he was busy, Smith had Powell-Lexing come in to do research along with Smith's legal assistant. Smith also indicated he used the check as a deposit for Powell-Lexing's participation. Hudspeth testified that although there was a contingency fee contract, Smith asked for the money so he could start working on her case.
Hudspeth testified that after the May meeting, Smith ignored her calls to him checking on the progress of the case, and she wrote additional letters in August, October, and December 2005 seeking an update. She testified that on January 14, 2006, Powell-Lexing called to say she and Smith had been working on the case, and that they would have a conference call with her to discuss it; however, the conference call never occurred. A January 16, 2006, letter from Hudspeth to Powell-Lexing made reference to Powell-Lexing's response and went over what Hudspeth considered to be the major issues, while a January 27, 2006, fax to Smith and Powell-Lexing indicated that she and the attorneys had agreed to meet the following *796 Monday "to finalize and file documents." According to Hudspeth, this meeting took place on Monday, January 30, 2006, at which time she learned that Smith had not drafted any documents. Hudspeth testified that Smith told her at the time that he would "go downtown on Jackson Street" and file her case the following Monday. Smith denied ever making that statement.
Hudspeth further testified that on February 2, 2006, Smith informed her that he had concerns about whether filing the case would "bring CenturyTel to the table." On cross-examination, she admitted Smith advised her in February 2006 that he had determined that because CenturyTel had been a joint venturer with Spectra, the entity against which Hudspeth had filed her initial legal action, an action against CenturyTel would be subject to res judicata. Hudspeth sent Smith a letter dated February 2, 2006, expressing her displeasure and disappointment, and requesting Smith to return all file documents and funds to her. She followed up the letter with a March 1, 2006, fax indicating that she had not yet received anything and requesting Smith's immediate attention and prompt action.
Hudspeth filed suit against Smith and Powell-Lexing on March 27, 2006, making the allegations previously noted. In addition to her testimony, she introduced into evidence copies of the letters and faxes she had sent, as well as the $1,000 check. She also introduced a list of her claimed expenses and damages. However, she attempted unsuccessfully to introduce a document purportedly from the Louisiana State Bar Association in connection with her assertion, which she raises on appeal, that Smith was ineligible to practice law during a period of the attorney-client relationship between them. The trial court sustained an objection based on lack of relevance, and Hudspeth did not proffer the document.
After Hudspeth concluded her presentation of the case, the court dismissed Powell-Lexing on an exception of no cause of action. The court also denied a motion for a directed verdict by Smith, who then testified to his due diligence in looking at all aspects of the matter and eventually concluding that res judicata would apply to a suit against CenturyTel. He indicated that Hudspeth "wasn't too pleased" with his analysis which she considered to be "a narrow interpretation." Smith denied ever promising Hudspeth that he would file a lawsuit, or indicating that he had prepared a petition, or was on his way to the courthouse. He also denied talking to Hudspeth about a contingency fee contract and indicated that approximately 20 hours of research had been performed in assessing whether a successful claim could be made against CenturyTel.
Smith expressed his belief that he had been "very nice and lenient" by not demanding a large deposit, and stated that while Hudspeth may have been disappointed that she was not his only client, he and his staff "could not all the time just continually talk to her" each time she wanted to discuss matters, particularly when they were "working trying to develop her case." Smith also indicated on cross-examination that while he remembered receiving the February letter requesting return of Hudspeth's documents, he had given instructions to his paralegal to send them and thought the matter was concluded until he later heard from Hudspeth.
Pursuant to his cross-examination of Hudspeth, and over her objection, Smith introduced several items from Hudspeth's prior suit against Spectra. The order dismissing her federal lawsuit indicated that Spectra was a joint venture consisting of several investors, including CenturyTel. *797 The federal court found no material facts in dispute and that Hudspeth was discharged as a direct result of numerous complaints made against her by her co-workers, not because of racial animus. The court also found that she had put forward no evidence that she was discharged because of her gender, that she had provided absolutely no factual basis for her claim of hostile work environment, and that she had been unable to show that Spectra's proffered reason for terminating her  the numerous complaints regarding her performance  was a pretext for discrimination. The court also noted that while Hudspeth's complaint was the first EEOC complaint against Spectra, Hudspeth had "filed EEOC complaints against every employer for whom she has worked since 1978 (as listed by her resume), and filed suit against all but one."
In the instant case, the trial court found that $1,000 "would not be out of line with the work performed," and found that Hudspeth failed to satisfy her burden of proof. With respect to Hudspeth's complaints at trial concerning the confidentiality of contents of her file that Smith had put into evidence, the court stated that "when you sue . . . the lawyer alleging he failed to do the work, it would be natural for him to defend it by showing his files." The court also denied a reconventional demand that Smith had filed for the value of legal services in excess of $1,000.

DISCUSSION
On appeal, Hudspeth raises the following four issues in her pro se appellate brief:
 The trial court erred and abused its discretion in denying the ineligibility evidence from the Louisiana State Bar Association, which prevented and denied plaintiff the opportunity to establish her malpractice claim.
 The trial court erred and abused its discretion in dismissing her case because Smith had "unclean hands" by refusing to return her case file.
 The trial court erred and abused its discretion in granting Powell-Lexing's exception of no cause of action and motion to strike.
 The trial court erred, abused its discretion, and committed prejudicial error by allowing improper, inadmissible, and unfairly prejudicial evidence.
Ineligibility Evidence
To establish a claim for legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. Failure to prove one of these elements is fatal to the claim; a plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim. Dark v. Marshall, 41,711 (La.App.2d Cir.12/13/06), 945 So.2d 246.
While Hudspeth has unquestionably shown an attorney-client relationship between her and Smith, she has not shown that his brief period of ineligibility resulted in any loss to her.[2] Additionally, with respect to proof of loss, we note that her suit against Spectra was dismissed on summary judgment, and she did not establish how a suit against CenturyTel would *798 have fared any better. Nor has she set forth any legal arguments why res judicata would not apply to such a lawsuit.
Furthermore, concerning Hudspeth's allegation on appeal that Smith violated the Rules of Professional Conduct by not accounting for and returning unearned fees, we note that the court essentially found the work performed on the case was worth the $1,000 paid by Hudspeth. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Bright Morning Star Missionary Baptist Church v. Brown, 38,333 (La.App.2d Cir.5/28/04), 877 So.2d 1003, writ not considered, 2004-2136 (La.11/15/04), 887 So.2d 466. We detect no abuse of discretion here. Additionally, we note that outside the context of actual loss suffered, Hudspeth's claims on appeal of lack of diligence, failure to communicate, failure to cooperate, and failure to notify of ineligibility to practice law are properly addressed through complaints to the Louisiana State Bar Association.
Finally, we note that evidence that has been excluded should have been proffered. See La. C.C.P. art. 1636. It is incumbent upon the party who contends its evidence was improperly excluded to make a proffer, and if it fails to do so, it waives its right to complain of the exclusion on appeal. Goodwin v. Goodwin, 618 So.2d 579 (La.App. 2d Cir.1993), writ denied, 623 So.2d 1340 (La.1993); Engineered Mechanical Services, Inc. v. Langlois, 464 So.2d 329 (La.App. 1st Cir.1984), writ denied, 467 So.2d 531 (La.1985).
The Case File
For the reasons set forth above, not returning the case file, standing alone, does not equate to legal malpractice. Hudspeth has not shown how she suffered any loss because the file was not promptly returned. We note that Hudspeth introduced copies of the faxes and letters she had sent, thus showing that Smith's possession of the file did not inhibit her in that regard, and she does not allege that there was anything else in the file that she needed, but did not have access to, in preparing her case against Smith.
Exception of No Cause of Action
While Hudspeth argues against the dismissal of Powell-Lexing, she did not appeal the judgment granting the exception of no cause of action. That final judgment was signed on September 18, 2006, but Hudspeth's motion for appeal only requests an appeal from the September 21, 2006, judgment. Accordingly, the former judgment is final and definitive and cannot now be questioned on appeal.
Introduction of the Case File into Evidence
In Hudspeth's last argument, she complains about Smith introducing her case file into evidence over her objection. She asserts that the file contained "confidential and privileged documents" and that it had no relevance to the proceeding. According to Hudspeth, Smith used the file to "stack the deck" against Hudspeth.
Initially, we note that Hudspeth does not identify any particular document or documents or explain how their introduction worked against her. Instead, if the file had no relevance to the proceeding, as Hudspeth alleges on appeal, then even erroneous introduction of file contents would not suggest any resulting harm or prejudice. On the other hand, we note that La. C.E. art. 506 recognizes the lawyer-client privilege under which a client has a privilege *799 to prevent a lawyer from disclosing a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional services. However, La. C.E. art. 506 has a specific exception under which there is no privilege for a communication "which is relevant to an issue of breach of duty by a lawyer to the client or by a client to the client's lawyer." Hudspeth asserted numerous breaches of duty by Smith, as well as theft, and Smith was entitled to introduce evidence from the case file in defense of the allegations against him. The defense exhibits herein consisted of various items, including briefs and depositions, from the initial litigation against Spectra. These items concerned the factual and legal background of the matter on which Hudspeth wanted Smith to file a lawsuit and they were relevant to the complexity of the research and difficulty of the work that Smith undertook. Therefore, they had relevance to the value of the legal services rendered.

DECREE
For the reasons set forth above, at appellant's costs, the judgment of the trial court is AFFIRMED.
NOTES
[1] According to the federal district court's order dismissing Hudspeth's suit, CenturyTel was a partner in the joint venture known as Spectra Communications.
[2] According to a document attached to Hudspeth's reply brief, Smith had been ineligible to practice from October 31, 2005, to January 30, 2006, because of his failure to pay his annual State Bar dues and annual Disciplinary Board assessment. This covers only a portion of the time that Smith represented Hudspeth in this matter, and the record is unclear whether Smith earned any part of his fee during this period.