# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1353


**JONATHAN STELLY**

**VERSUS**

**MORROW, MORROW, RYAN & BASSET, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2009-1715-A
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***


## SYLVIA R. COOKS
## JUDGE


**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters and Marc T. Amy, Judges.

**AFFIRMED**.

Maurice Le Gardeur
Le Gardeur Ltd.
222 N. Massachusetts St.
Covington, LA 70433
(985) 892-1420
COUNSEL FOR PLAINTIFF/APPELLANT:
    Jonathan Stelly


Adam S. Lambert
517 Huntlee Dr.
New Orleans, LA  70131-5221
(504) 433-0289
COUNSEL FOR PLAINTIFF/APPELLANT:
    Jonathan Stelly

**James H. Gibson**
**Allen & Gooch**
**2000 Kaliste Saloom Rd., Suite 400**
**P.O. Drawer 3768**
**Lafayette, LA  70502-3768**
**(337) 291-1300**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Morrow, Morrow, Ryan & Basset, et al.**

**COOKS, Judge.**

This case arose from the treatment of Jonathan Stelly by Dr. Mehmood Patel, a cardiologist who worked and performed surgeries at Lafayette General Hospital. Dr. Patel began treating Jonathan when he was a young child and placed him on Tenormin, a high blood pressure medication. In 2002, when Jonathan was twenty-four (24) years old, Dr. Patel performed an angiogram allegedly because he detected a low heart rate. Dr. Patel then informed Jonathan he would require insertion of a permanent pacemaker. The pacemaker was installed by Dr. Patel in January, 2003.

Subsequent visits with other cardiologists called into question the necessity of the pacemaker implanted in Jonathan. It was eventually determined he did not need it, and it was turned off. Jonathan, a professional baseball player, alleged the installation of the unnecessary pacemaker ended his baseball career and may keep him from pursuing his chosen second profession in the United States Navy. A medical malpractice suit was filed on his behalf against Dr. Patel.

Defendants represented Jonathan along with many other plaintiff patients of Dr. Patel. Subsequent to his treatment of Jonathan, Dr. Patel was convicted of performing numerous unnecessary cardiologic procedures and billing Medicare and Medicaid. He was sentenced to ten years in prison for the offenses. Eventually a class action settlement was approved by the District Court of Lafayette. Notice was sent to Jonathan regarding the terms of the Class Action Settlement, along with the following letter, which read in part:

> The criminal trial of Dr. Patel is scheduled for August 28, 2008. If we do not accept this settlement and Dr. Patel is convicted, then his insurance company will pay nothing since the policy does not apply to intentional acts of wrongdoing. For this reason, we do not think we will be able to recover anything from Dr. Patel other than the available insurance policy.

According to Jonathan, after reading this letter, he felt compelled to accept what he

believed to be his only viable avenue for relief. He completed the forms to participate in the class settlement.

Defendants then retained a medical doctor, Dr. Harris Lappin, to review the individual medical claims of the class members to place them in tiers for settlement purposes. According to Jonathan, Dr. Lappin was not provided with sufficient information to evaluate his condition properly, which Dr. Lappin acknowledged in an e-mail sent to defendants. However, rather than waiting for additional information, Dr. Lappin decided to "write a report for the inappropriate catheterization and invasive studies– just not for the pacemaker." Consequently, Jonathan was placed in the lowest tier of plaintiffs, and received only a small part of what he contends he was entitled.

At the request of defendants, Jonathan and his undersigned counsel signed a stipulation which allowed the settlement to move forward, but reserve Jonathan's right to move forward with the case against his former attorneys. The stipulation specifically provided that in return for allowing the class to be settled by removing his objection, Jonathan's waiver would not be used as a defense, bar, estoppel, etc. to the claim for damages for the amount of the allocation.[1]

Defendants filed a motion for summary judgment on several grounds: (1) there is no evidence to support a finding of medical malpractice on Dr. Patel's part; (2) Jonathan's participation in the class action settlement process estopps him from pursing this action against Defendants; and (3) Jonathan did not have his legal position impaired by any actions/inactions of Defendants. Jonathan was granted a

---

[1] The stipulation provided as follows:

The undersigned stipulate that the waiver by Jonathan Stelly of his objection to his class action allocation in the matter, Barbara Pellerin, et al. v. LAMMICO, et al., Docket No. C-20084712, 15th Judicial District Court, will not be used as a bar, defense, estoppel, or in mitigation of Mr. Stelly's claim for damages herein for the amount of said allocation.

-2-

Motion to Continue, over Defendants' objection, in order to have more time to obtain an expert medical opinion.[2]

On June 28, 2010, the hearing on the motion for summary judgment was held. The trial court granted the motion, finding that Jonathan was in the same legal position before and after his discharge of Defendants as counsels and, therefore, there was no legal malpractice committed. The trial court specifically stated that at the moment Jonathan discharged his previous counsel and hired his current counsel, his claim had not been finally determined. Thus, at that time Jonathan had the right to fully pursue his medical malpractice claim and "malpractice didn't exist at the time of [Defendants'] discharge."

Jonathan appealed the trial court's ruling, asserting the following assignments of error:

> 1.    The lower court committed an error of law when it granted summary judgment to the defendants-appellees, despite the existence of a valid countervailing affidavit from a licensed and recognized expert witness filed on behalf of the plaintiff-appellant.
>
> 2.    The lower court committed errors of law when it failed to apply the correct legal standard of care for medical practitioners and failed to apply the correct definition of the medical term "contraindicated" as a "harmful" action falling below the recognized standard of care for medical practitioners.
>
> 3.    The lower court committed an error of law when it prematurely considered summary judgment when no opportunity for discovery whatsoever had been given to plaintiff.
>
> 4.    The lower court committed an error of law when it accepted the defendants-appellees' brief and oral argument based upon an unpublished opinion and considered that unpublished opinion as precedent in deciding the case *sub judice*.

---

[2] Defendants filed for writs to this court, which were denied. Writs were then sought to the Louisiana Supreme Court, which have been stayed, pending the outcome of this appeal.

## ANALYSIS

At the summary judgment hearing, the trial court elucidated his reasons for granting Defendants' motion for summary judgment:

> THE COURT: Here's my problem with your interpretation of the stipulation. To me – To me the question of whether or not Mr. Ryan committed malpractice, the facts that dictate that decision – whether or not he committed malpractice in his representation of Mr. Stelly, the facts that dictate that conclusion have to have existed while he was his lawyer.
>
> In other words, after he discharged Mr. Ryan the question that I have to – or the fact-finder would have to decide in this case is did Ryan commit malpractice. Well, at that moment when he was discharged his claim had not been finally determined. He hired you. He had the right to pursue the claim. And who knows what would have come of it. But I don't think I can go past that moment in time to determine whether or not Mr. Ryan committed malpractice.
>
> . . . .
>
> But [the stipulation] can't bootstrap your client into a malpractice case when malpractice didn't exist at the time of Ryan's discharge.
>
> . . . .
>
> I'm going to grant the motion.

The record reveals the trial court specifically found that at the time Jonathan discharged Defendants as his attorneys, his claim had not yet been fully determined, and, when he hired his current counsel, he still had the right to pursue his claim in the matter, i.e., challenge his allocation in the class. Thus, the trial court held no legal malpractice existed at the time of discharge since Jonathan still had all of his rights available in the underlying medical malpractice claim and his legal position was unchanged. In none of Jonathan's listed assignments of error, nor in the entirety of his appellate brief, does he discuss the trial court's stated reasons for its decision. Instead, he chooses to reprise issues which were argued below, but did not form any part of the trial court's basis for judgment. Despite this, in the interests of justice we will address the propriety of the trial court's grant of summary judgment.

In order to state a claim for legal malpractice, a plaintiff must allege (1) there was an attorney-client relationship, (2) the attorney was negligent in the representation of the client, and (3) the negligence caused the plaintiff some loss. *Jenkins v. St. Paul Fire and Marine Ins. Co.*, 422 So.2d 1109 (La.1982); *Dinger v. Shea*, 96-448 (La.App. 3 Cir. 12/11/96), 685 So.2d 485. Plaintiff has the burden of proving the existence of damages and the causal connection between them and the negligent act by a preponderance of the evidence.

The Louisiana Supreme Court in *Costello v. Hardy*, 03-1146 (La. 1/21/03), 864 So.2d 129, held that summary judgment is proper as to the third element of a plaintiff's legal malpractice claim, i.e., the "absence of factual support for an essential element of plaintiff's claim: loss or damages. The supreme court found the plaintiff in *Costello* would be unable to prove any loss as a result of any alleged legal malpractice. The trial court reached the same conclusion in the present case and granted summary judgment in favor of Defendants.

The cases have consistently held that when an attorney's client is in the same legal position before and after the attorney is removed from the representation, there can be no legal malpractice. In *Oyefodun v. Spears*, 95-1472 (La.App. 4 Cir. 2/15/96), 669 So.2d 1261, *writ denied*, 96-669 (La. 4/26/96), 672 So.2d 672, the court found the plaintiff's claim was still viable for almost one year after the defendant attorney was discharged. Therefore, the court held plaintiff's legal rights were unchanged as a result of the defendant attorney's acts/omissions and affirmed the grant of summary judgment dismissing the legal malpractice claim.

In *Dark v. Marshall*, 41,711 (La.App. 2 Cir. 12/13/06), 945 So.2d 246, the court therein considered whether legal malpractice occurred when a claim allegedly filed late by the defendant attorney was still viable when the defendant attorney

withdrew from representation. The court found the claim at issue had not prescribed before the defendant attorney withdrew; thus, there was no loss caused by the alleged negligence because the claim could still be filed after the withdrawal.

See also *Hudspeth v. Smith*, 42,647 (La.App. 2 Cir. 11/7/07), 969 So.2d 793, wherein summary judgment was affirmed dismissing a legal malpractice claim on the basis the plaintiff failed to show how the complained of acts resulted in any loss to her; and *Hartz v. Farrugia*, 2009 WL 901767 (E.D. La. 2009), where the federal court relied on *Oyefodun* for the proposition that the defendants were not liable for loss of a claim that remained viable after the date the representation ended.

The trial court correctly found no legal malpractice existed at the time of Defendants' discharge as attorneys of record since Jonathan still possessed all of his rights in the underlying medical malpractice action and his legal position was unchanged.

The language in the stipulation relied upon by Jonathan's counsel is not sufficient to bar admission of the evidence regarding Jonathan's available option to protect his right to a larger portion of the settlement funds by seeking a tier reclassification. The stipulation simply says the "waiver" could not be used. The stipulation was not broad enough to include any reference to the class action proceedings except perhaps Jonathan's erroneous placement in tier 3.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to Plaintiff-Appellant.

**AFFIRMED.**