945 So.2d 246 (2006)
Bilbo Spencer DARK, Plaintiff-Appellant,
v.
Benjamin F. MARSHALL, IV, Defendant-Appellee.
No. 41,711-CA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
*247 The Bezou Law Firm by Jacques F. Bezou, Covington, for Appellant.
Allen & Gooch Counsel by Troy Allen Broussard, Lafayette, for Appellee.
Before GASKINS, CARAWAY and SEXTON (pro tempore), JJ.
CARAWAY, J.
Appellant sued her former attorney seeking damages for professional negligence arising from his alleged failure to timely include her excess/ umbrella automobile insurer into a tort action filed on her behalf. The insurer was later brought into the action by a second attorney and raised the defense of prescription. Appellant contends the defendant's omission ultimately reduced her recovery right against the excess carrier. The trial court granted defendant's motion for summary judgment, prompting this appeal. Since we find that appellant's claim against the excess insurer did not prescribe before its inclusion in the prior suit, we affirm.

Facts
The defendant, Benjamin F. Marshall, IV ("Marshall"), is the former attorney of appellant, Bilbo Spencer Dark ("Dark"). The attorney/client relationship began after Dark was seriously injured in an automobile accident in Monroe on May 15, 2000. Marshall filed a petition against the tortfeasor, Jason McKenzie ("McKenzie"), and his insurer on April 4, 2001. About six months later, on September 27, 2001, the first amended petition added Dark's uninsured/underinsured motorist (U/M) insurer, Assurance Corporation of America ("Assurance"). Dark also had U/M coverage under an umbrella liability policy issued by Maryland Insurance Company ("Maryland"), yet Maryland was not added as a defendant with Assurance. The umbrella policy covered excess U/M claims; Marshall's failure to include Maryland as a defendant ultimately became the basis for this malpractice claim.
On December 21, 2001, Dark entered a settlement, receipt and release with McKenzie and his insurer for the $25,000 policy limit, reserving her claim against Assurance. A judgment dismissing the *248 former defendants with prejudice was signed on January 4, 2002.
On October 24, 2002, Marshall represented Dark in an unsuccessful mediation with Assurance for payment of benefits under her primary U/M coverage. Thereafter, Dark sought and obtained new counsel, and this attorney filed a third amended petition bringing Maryland into the original tort suit on October 6, 2003. Maryland defended the suit with a peremptory exception of prescription, urging that the two-year prescriptive period allowed under La. R.S. 9:5629 for suing the U/M carrier had elapsed.
In 2005, Dark settled with Assurance and Maryland for $250,000 in exchange for a receipt and release of claims, but reserved her rights against Marshall. The prescription exception was never disposed of by the trial court before Maryland's dismissal from the suit.
This malpractice action was instituted against Marshall, and Dark now appeals Marshall's dismissal by summary judgment.

Discussion
The applicable law regarding summary judgment and legal malpractice was explained by this court in Whittington v. Kelly, 40,386 (La.App.2d Cir.12/14/05), 917 So.2d 688:
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2). The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Appellate review of the grant or denial of a summary judgments is de novo. To establish a claim for legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. Failure to prove one of these elements is fatal to the claim. A plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim.
In this case, Marshall argues that he was not negligent because the U/M claim against Maryland never prescribed. Additionally, Marshall asserts that by Dark's later settlement, she relinquished her chance of recovering U/M benefits from Maryland and should be estopped from claiming a loss by his alleged negligence. We agree with Marshall's assertion that no actionable negligence occurred because the claim against Maryland did not prescribe. We will therefore pretermit review of the asserted estoppel and the effect of Dark's settlement with Maryland.
The prescription applicable to Dark's U/M claim against Maryland is the two-year prescriptive period set forth in La. R.S. 9:5629 which provides:
Actions for the recovery of damages sustained in motor vehicle accidents brought pursuant to uninsured motorist provisions in motor vehicle insurance policies are prescribed by two years reckoning from the date of the accident in which the damage was sustained.
By effect of law and the terms of the insuring agreement, both the U/M carrier and the tortfeasor are obligated for the same thing and are therefore solidary obligors. *249 Hoefly v. Gov't Employees Ins. Co., 418 So.2d 575 (La.1982); Woodfield v. Bowman, 1998 WL 382139 (E.D.La.7/9/98). An interruption of prescription against one solidary obligor is effective against all other solidary obligors. La. C.C. arts. 1799, 3503; Greenfield v. Lykes Bros. Steamship Co., 02-1377 (La.App. 1st Cir.5/9/03), 848 So.2d 30; Potts v. Estate of Guidry, 04-1386 (La.App. 3d Cir.3/9/05), 897 So.2d 913, writ denied, 05-874 (La.5/13/05), 902 So.2d 1032.
From this authority, the dispute over the prescription affecting the claim against Maryland rests on the rule of Civil Code Article 3463 and the effect of the dismissal of the suit against the original tortfeasor, McKenzie, who was a solidary obligor with Maryland. Civil Code Article 3463 provides as follows:
An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive period continues as long as the suit is pending. Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses the action at any time either before the defendant has made any appearance of record or thereafter, or fails to prosecute the suit at the trial.
From the general rule of the first sentence of Article 3463, the initial filing of the suit against McKenzie within one year of the accident interrupted both the one-year prescription running on the tort claim against McKenzie and the special two-year prescription applicable to Maryland, as a solidary obligor. Marshall acknowledges that when the compromise settlement was reached between Dark and the tortfeasor and the suit was dismissed in January 2002, this interruption ended. Nevertheless, according to Marshall, the suit filed in October 2003 against Maryland interrupted prescription a second time before the two-year prescriptive period tolled.
To the contrary, Dark argues that the interruption of prescription caused by the initial suit against McKenzie is considered as never having occurred because of the settlement and dismissal of that action. According to Dark, the judgment dismissing McKenzie was a "voluntary" dismissal. Thus, the second sentence of Article 3463 indicates that interruption of prescription is deemed to never have occurred. Since Maryland was brought into the action well over two years after the accident, recovery from the excess insurer according to Dark was affected by Marshall's professional negligence.
Both parties discuss the Louisiana Supreme Court's significant ruling in Hebert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878 (La.1982), and the amendment to the language of Article 3463 brought about by that ruling. The case concerned a dismissal of a suit without prejudice and considered, as between the parties to the first suit, the effect of such dismissal on the interruption of prescription raised in a second suit against the same defendant. The court interpreted the phrase, "voluntarily dismisses," as used in prior Article 3519 of the Civil Code.[1] That former article is the source provision for the second sentence of Article 3463. The court noted that the language of voluntary dismissal was only added to former Article 3519 in 1960, when the Code of Civil Procedure was enacted. In the Code of Civil Procedure, the first sentence of Article 1671 addresses from a *250 procedural standpoint a unilateral and voluntary dismissal of a suit. Using La. C.C.P. art. 1671 as a guide to discern the meaning of the dismissal language of former Article 3519, the court ruled that "only before the defendants' general appearance does the plaintiff have the unqualified right to voluntarily dismiss." Id. at 881. This distinction made in Hebert was overruled by a 1999 amendment to Article 3463. Now under the amended article, any dismissal without prejudice, "either before the defendant has made an appearance of record or thereafter," may be considered a voluntary dismissal for purposes of Article 3463 so as to negate the interruption of prescription that otherwise occurs during the pendency of the action.
In contrast to the setting in Hebert v. Cournoyer, the voluntariness of a plaintiff's action resulting in dismissal of the suit with prejudice (the present setting) is never a vital or relevant measure concerning prescription between the parties to the suit as clearly shown by Article 1673 of the Code of Civil Procedure. That article provides that dismissal with prejudice has the effect of a final judgment and bars another suit between the parties on the same cause of action. Thus, as recognized in revision comment (b) to Civil Code Article 3463, "if the suit is dismissed with prejudice, the interruption of prescription is immaterial because of res judicata." That observation is correct as between the parties to the suit. Nevertheless, prescription and its interruption remain material under the general principle of Article 3463 regarding a second suit against a different solidary obligor, but likewise the voluntariness of the prior dismissal with prejudice has no meaningful application to such dismissal.
Unlike Hebert v. Cournoyer, another Hebert case decided by the Louisiana Supreme Court addressed a prescription claim in a dismissal setting identical to the case at hand. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986) (hereinafter "Doctors Hospital"). The dismissal of the suit against the first tortfeasor in Doctors Hospital was the result of a 1982 settlement agreement, yet the judgment of dismissal with prejudice was entered belatedly almost two years later, in 1984. The second tortfeasor was sued 19 months after the settlement and more than eight years after the accident. After the judgment of dismissal of the first tortfeasor with prejudice, the second tortfeasor raised prescription, and in defense, the plaintiff claimed interruption of prescription under Article 3463. The issue, as addressed by the Louisiana Supreme Court, rested entirely on the general principle of the first sentence of Article 3463 and the choice for when the time for the running of prescription recommences after settlement with the first tortfeasor. The court held that an interruption arising from the pendency of a suit against the first tortfeasor ends only at the time of the judgment of dismissal, not on the date of actual settlement. The significant implication of the Doctors Hospital's ruling is that it would not have been necessary if a dismissal with prejudice triggered the application of the second sentence of Article 3463. Instead, the dismissal of the first tortfeasor with prejudice because of the settlement was clearly not a voluntary dismissal which negated the interruption of prescription caused by the initial action.
In summary, the dismissal of a suit with prejudice after both parties to the action have settled the dispute cannot be characterized as a voluntary and unqualified dismissal by the plaintiff alone. In Doctors Hospital, the court observed that proof of a valid settlement to the trial court will support either "litigant's effort to dismiss a then pending lawsuit with prejudice." Hebert v. Doctors Memorial *251 Hospital, supra at p. 720. The court recognized both the plaintiff's and the defendant's right to seek dismissal after settlement. Thus, it cannot be said that such dismissal after settlement results unilaterally from plaintiff's voluntary election, which then negates the prior interruption of prescription pursuant to the second sentence of Article 3463. Reaching the same conclusion, the First Circuit in Pierce v. Foster Wheeler Constructors, Inc., 04-0333 (La.App. 1st Cir.2/16/05), 906 So.2d 605, 610, writ denied, 05-0567 (La.4/29/05), 901 So.2d 1071, also rejected the characterization that a plaintiff alone voluntarily dismisses the action by virtue of settlement since both parties "resolved it by transaction or compromise."

Conclusion
For the above reasons, we find that Dark maintained a viable claim for recovery against her excess U/M carrier, Maryland, and therefore suffered no loss by Marshall's representation as her attorney. The judgment of the trial court is affirmed. Costs of the appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] Former La. C.C. art. 3519 provided: "If the plaintiff in this case, after having made his demand, abandons, voluntarily dismisses, or fails to prosecute it at the trial, the interruption is considered as never having happened."