973 So.2d 154 (2007)
Doyle Wayne BOYD, et ux, Plaintiffs-Appellants
v.
FARMERS INSURANCE EXCHANGE, Defendant-Appellee.
No. 42,701-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2007.
Anthony J. Bruscato, Monroe, for Appellants,
*155 Wilkinson, Carmody & Gilliam, by Bobby S. Gilliam, Misty M. Futrell, Shreveport, for Appellee, Farmers Insurance Exchange.
Nelson, Zentner, Sartor & Snellings by George M. Snellings, IV, Monroe, for Appellee, State Farm Mutual Automobile Insurance Company.
Before STEWART, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
Following a collision of vehicles, appellants timely sued the negligent driver and soon reached a settlement with the driver and her liability carrier. Within two years of the dismissal of the first action, appellants sued their uninsured motorist ("UM") carrier, who raised the exception of prescription. The trial court granted the exception and dismissed the suit against the UM carrier. Finding error in that ruling, we reverse.

Facts
On September 3, 2003, Doyle W. Boyd was injured when he was rear-ended at a stop light by Ginna M. Ezell. Boyd was driving a pick-up truck owned by Teddy R. Taylor, Jr., whose UM carrier is State Farm Automobile Insurance Company ("State Farm"). Ezell's vehicle was also insured by State Farm. Farmers Insurance Exchange ("Farmers") was the UM carrier for Boyd.
Boyd and his wife sued Ezell and State Farm in district court on August 11, 2004 (hereinafter the "First Suit"). In this First Suit, although Ezell and State Farm never answered the petition, an attorney for those parties later contacted the Clerk of Court on December 23, 2004, giving the following directives:
Enclosed are an original and one copy of a "MOTION AND ORDER OF VOLUNTARY DISMISSAL WITH PREJUDICE." Please file the original and return the copy, certified, to me in the enclosed self-addressed, stamped envelope. As you can see, counsel for plaintiffs reserves rights against all parties except Ginna Morris Ezell and State Farm Mutual Automobile Insurance Company (solely in its capacity as Ms. Ezell's liability carrier).
Also enclosed is our firm's check in the amount of $154.26 in payment of court costs incurred up until any amended petition naming plaintiff's uninsured motorist carrier. That is, my clients are paying costs incurred by Plaintiffs in connection with the filing of the original petition and activities since then, but not for any amended petition naming the UM insurer. Counsel for Plaintiffs will presumably address costs with that Defendant at a later time, if any amended petition is filed.
The "Motion and Order of Voluntary Dismissal with Prejudice" referenced in this letter was signed by the Boyds' attorney only. Thereafter, on December 30, 2004, the judgment of dismissal was signed, "reserving unto Plaintiffs, all claims and causes of action against all remaining defendants."
Although the above letter and the reservation of rights language in the dismissal contemplated that other defendants might be added to the First Suit, that never occurred. However, one week prior to the dismissal, on December 22, 2004, the Boyds filed this suit (hereinafter the "Second Suit") against their UM carrier, Farmers.
Fifteen months after initiating the Second Suit, on March 1, 2006, Boyd filed an amended petition adding as a defendant State Farm in its capacity as Taylor's UM carrier. State Farm moved for dismissal *156 on the basis of prescription because 2½ years had elapsed since the accident.
At the hearing on the exception of prescription, in support of his argument that prescription had been interrupted, the Boyds' counsel submitted a copy of the record from the First Suit into evidence. The Boyds' argument was that the First Suit interrupted prescription within two years of State Farm's inclusion in the, Second Suit. Nevertheless, the trial court ruled that the action had prescribed and dismissed the suit. The Boyds appeal the judgment.

Discussion
The two-year prescription applicable to uninsured motorist coverage is set forth in La. R.S. 9:5629, as follows:
Actions for the recovery of damages sustained in motor vehicle accidents brought pursuant to uninsured motorist provisions in motor vehicle insurance policies are prescribed by two years reckoning from the date of the accident in which the damage was sustained.
Our insurance code also addresses the multiple coverage of the two UM carriers involved in this action in La. R.S. 22:680(1)(c), as follows:
(c)(i) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subparagraph (1)(a) of this Section, then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance, and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; however, with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
(ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following priorities of recovery under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
The sequence of procedural events bearing on the issue of prescription in this case involves successive suits in which the tortfeasor and two UM carriers were made defendants at different phases in the litigation. The basic principles of Civil Code Articles 3462 and 3503-that interruption of prescription results from the pendency of suit in a competent court with proper venue and that the interruption is effective against all solidary obligorsare not questioned by the parties. Likewise, Civil Code Article 1795 provides that "[u]nless the obligation is extinguished, an obligee may institute action against any of his solidary obligors even after institution of action against another solidary obligor." The First Suit, naming the tortfeasor and her liability insurer, was filed within one year of the accident, and therefore interrupted prescription. Whether that interruption was lost by the application of the second sentence of Civil Code Article 3463 and dismissal of the First Suit is the primary question presented. Additionally, the existence of a solidary relationship between the tortfeasor and UM insurers and *157 between the UM insurers themselves has been discussed in the arguments of the parties.[1]
This court has recently addressed these issues in Dark v. Marshall, 41,711 (La. App.2d Cir.12/13/06), 945 So.2d 246. There, we cited Hoefly v. Gov't Employees Ins. Co., 418 So.2d 575 (La.1982), for its holding that the UM carrier and the tortfeasor are obligated for the same thing and are therefore solidary obligors. State Farm overlooks this principle by arguing that "[t]he only way the suit could be timely is if the UM carrier and the liability carrier are solidary obligors." Admittedly, Rizer v. American Suretty & Fidelity Ins. Co., 95-1200 (La.3/8/96), 669 So.2d 387, held that those two carriers are not solidary obligors and an initial suit against the liability carrier has no effect on the running of prescription on the UM claim. Nevertheless, in the present case, unlike the facts in Rizer, the tortfeasor was also sued timely in the First Suit, along with the tortfeasor's liability carrier, so as to interrupt the two-year UM prescriptive period. Therefore, the principle of Hoefly governs, interruption of prescription concerning State Farm's UM obligation occurred during the pendency of the First Suit, and the Rizer ruling has no application.
Nevertheless, State. Farm further argues that the pleading for the dismissal of the First Suit was labeled as a "voluntary dismissal with prejudice," which therefore implicates the nullifying effect on the First Suit's interruption of prescription as provided in the second sentence of Civil Code Article 3463. That proyision states:
Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses the action at any time either before the defendant has made any appearance of record or thereafter, or fails to prosecute the suit at the trial.
Regardless of the technical label placed on the motion for dismissal of the First Suit, the letter of the tortfeasor/defendant's attorney quoted above indicates that a settlement of the First Suit occurred and that the Boyds would proceed with further litigation against a UM carrier. Indeed, in oral argument before this court, State Farm's attorney acknowledged that the Boyds' dismissal of their claims in the First Suit against the tortfeasor, Ezell, resulted because of the settlement between the parties.
In Dark v. Marshall, supra, we interpreted the second sentence of Article 3463 after reviewing the amendment to that article that occurred after the Louisiana Supreme Court's important holding in He-bert, v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878 (La.1982). We further reviewed the Code of Civil Procedure articles pertaining to the dismissal of an action. La. C.C.P. arts. 1671, et seq. The suit dismissal addressed in Dark resulted, as in this case, from an initial settlement with a tortfeasor who had been timely sued and was likewise a dismissal with prejudice. Our holding in Dark, which we now repeat, requires the reversal of the prescription ruling in this case:
Now under the amended article, any dismissal without prejudice, "either before the defendant has made an appearance of record or thereafter," may be considered a voluntary dismissal for purposes of Article 3463 so as to negate the interruption of prescription that otherwise *158 occurs during the pendency of the action.
In contrast to the setting in Hebert v. Cournoyer, the voluntariness of a plaintiff's action resulting in dismissal of the suit with prejudice (the present setting) is never a vital or relevant measure concerning prescription between the parties to the suit as clearly shown by Article 1673 of the Code of Civil Procedure. That article provides that dismissal with prejudice has the effect of a final judgment and bars another suit between the parties on the same cause of action. Thus, as recognized in revision comment (b) to Civil Code Article 3463, "if the suit is dismissed with prejudice, the interruption of prescription is immaterial because of res judicata." That observation is correct as between the parties to the suit. Nevertheless, prescription and its interruption remain material under the general principle of Article 3463 regarding a second suit against a different solidary obligor, but likewise the voluntariness of the prior dismissal with prejudice has no meaningful application to such dismissal.
Unlike Hebert v. Cournoyer, another Hebert case decided by the Louisiana Supreme Court addressed a prescription claim in a dismissal setting identical to the case at hand. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La. 1986) (hereinafter "Doctors Hospital"). The dismissal of the suit against the first tortfeasor in Doctors Hospital was the result of a 1982 settlement agreement, yet the judgment of dismissal with prejudice was entered belatedly almost two years later, in 1984. The second tortfeasor was sued 19 months after the settlement and more than eight years after the accident. After the judgment of dismissal of the first tortfeasor with prejudice, the second tortfeasor raised prescription, and in defense, the plaintiff claimed interruption of prescription under Article 3463. The issue, as addressed by the Louisiana Supreme Court, rested entirely on the general principle of the first sentence of Article 3463 and the choice for when the time for the running of prescription recommences after settlement with the first tortfeasor. The court held that an interruption arising from the pendency of a suit against the first tortfeasor ends only at the time of the judgment of dismissal, not on the date of actual settlement. The significant implication of the Doctors Hospital's ruling is that it would not have been necessary if a dismissal with prejudice triggered the application of the second sentence of Article 3463. Instead, the dismissal of the first tortfeasor with prejudice because of the settlement was clearly not a voluntary dismissal which negated the interruption of prescription caused by the initial action.
In summary, the dismissal of a suit with prejudice after both parties to the action have settled the dispute cannot be characterized as a voluntary and unqualified dismissal by the plaintiff alone. In Doctors Hospital, the court observed that proof of a valid settlement to the trial court will support either "litigant's effort to dismiss a then pending lawsuit with prejudice." Hebert v. Doctors Memorial Hospital, supra at p. 720. The court recognized both the plaintiff's and the defendant's right to seek dismissal after settlement. Thus, it cannot be said that such dismissal after settlement results unilaterally from plaintiffs voluntary election, which then negates the prior interruption of prescription pursuant to the second sentence of Article 3463. Reaching the same conclusion, the First Circuit in Pierce v. Foster Wheeler Constructors, Inc., 04-0333 (La.App. 1st *159 Cir.2/16/05), 906 So.2d 605, 610, writ denied, 05-0567 (La.4/29/05), 901 So.2d 1071, also rejected the characterization that a plaintiff alone voluntarily dismisses the action by virtue of settlement since both parties "resolved it by transaction or compromise."
Id. at 945 So.2d 250, 251.

Conclusion
In this case, prescription was timely interrupted by the First Suit against the tortfeasor. The dismissal of the First Suit, with prejudice following settlement with the tortfeasor in December 2004 did not nullify the interruption of prescription vis-a-vis other solidary obligors with the tortfeasor who were not defendants in that action. The second sentence of Civil Code Article 3463 had" no effect because the dismissal of the First Suit with prejudice is not considered a voluntary dismissal under Article 1671 of the Code of Civil Procedure and the jurisprudence interpreting Article 3463. The addition of the UM carrier, State Farm, into this Second Suit on March 1, 2006, was within the two-year prescriptive period that began running again after. December 2004 and therefore was a timely action. Accordingly, the trial court's dismissal of this action against State Farm on its grant of the exception of prescription is reversed.
Costs of appeal are assessed to appellee.
REVERSED.
NOTES
[1] Since we determine that prescription was interrupted by the filing of the First Suit against the tortfeasor, we need not consider, the question of whether the two UM carriers were solidarily liable. If so, this suit against Farmers within two years of the accident also interrupted prescription before State Farm was added as a defendant.