PETTIGREW, J.
lain this case, defendant insurer appeals from the trial court’s February 10, 2016 judgment granting summary judgments in favor of plaintiffs and ordering that defendant insurer owed plaintiffs uninsured motorist (“UM”) coverage. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
In June 2006, pursuant to an Independent Contractor Service Agreement (“Service Agreement”), plaintiff, Denise Guidry, leased her 1998 Ford pickup truck to Venture Transport Logistics, LLC (“Venture”) as a hotshot vehicle. It was agreed to by Denise and Venture that Denise’s husband, plaintiff, Calvin Guidry, would be hired by Denise and designated as the driver of the truck. With regard to insurance on Denise’s truck, the Service Agreement provided, in pertinent part, as follows:
[DENISE P. GUIDRY] shall carry “bobtail” insurance in the amount of $1,000,000.00 per occurrence. The “bobtail” insurance required herein shall be endorsed to provide coverage to VENTURE as additional insured.... Should [DENISE P. GUIDRY] for any reason not have “bobtail” insurance, VENTURE, is not obligated to, but may at its own option, arrange for and obtain “bobtail” insurance ..., for the benefit of [DENISE P. GUIDRY], and bill [DENISE P. GUIDRY] .... The cost of said insurance will be provided to [DENISE P. GUIDRY] on a weekly ... basis at a rate of $12.00.
Concerning compensation, the Service Agreement stipulated that Venture would pay Denise 75 percent of “line haul revenue”. “Line haul revenue” was defined as “the portion of revenue derived by transporting a shipment from the consignor’s origin to the consignee’s destination as related on VENTURE’S shipping documents.”
On July 14, 2006, the Guidrys received a dispatch order from Venture to pick up a load of oil field supplies and deliver the load to the Chevron base in Leeville, Louisiana. After delivering the load, the Gui-drys were involved in an automobile accident with Patricia Mousseau on Highway 90 in Des Allemands, Louisiana. At the time of the accident, Calvin was driving the hotshot vehicle, and Denise was an authorized passenger.
Following the accident, the Guidrys filed suit on July 12, 2007, against Patricia Mousseau, her husband Glenn Mousseau, their liability insurer, USAgencies Casualty Insurance Company, Inc. (“USAgencies”), Venture, and Venture’s trucking liability insurer, | .¡Zurich American Insurance Company (“Zurich”). In May 2008, plaintiffs settled their claims with the Mous-seaus and USAgencies and subsequently filed a partial motion to dismiss the Mous-seaus and USAgencies, with prejudice. The trial court signed an order granting the motion on August 12, 2008. Plaintiffs, however, specifically reserved their right to pursue their claims against Venture and *411 Zurich and any other unnamed party. Thereafter, on December 11, 2009, plaintiffs amended their petition to assert an uninsured motorist claim against Hudson Insurance Company (“Hudson”), the insurer from whom the required “bobtail” coverage was obtained.[2]
In December 2010, Hudson moved for summary judgment arguing that because plaintiffs were acting in the course and scope of their employment with Venture at the time of the accident, no coverage existed under the Hudson policy.[3] Plaintiffs filed an opposition to that motion, along with a cross-motion for summary judgment asking the court to issue a judgment declaring that they were not in the business of Venture at the time of the accident and that the Hudson policy applied. The trial court denied Hudson’s motion for summary judgment on February 24, 2011, noting in reasons for judgment, “Based upon the specific facts presented in the record of this case, the trial court concludes that the covered auto was no longer ‘in the business’ of [Venture] and the exclusion in the [Hudson] policy does not apply.” Hudson applied to this court for supervisory review, which was ultimately denied by another panel of this court. Guidry v. US Agencies, 2011-0764 (La. App. 1 Cir. 10/14/11) (unpublished writ action). On | .(December 22, 2011, counsel for plaintiffs received a tender check in the amount of $100,000.00 from Hudson, to which no reservation of rights was attached.
Thereafter, in March 2012, Venture and Zurich moved for summary judgment seeking dismissal of all of plaintiffs’ claims against them. They argued that because the trial court had already determined that plaintiffs were not acting in the business of Venture at the time of the accident and that the Hudson exclusion provision did not apply, any further review of the coverage issue was precluded by the law of the case doctrine. They also maintained that the Hudson policy provided the primary coverage for the loss at issue. Hudson did not file any opposition to this motion.
The matter proceeded to hearing in September 2012, at which time counsel for all parties were present, including Hudson’s counsel. The following colloquy occurred:
[COUNSEL FOR VENTURE AND ZURICH]:
—nobody seems to contest this that the Hudson policy per its terms, is the primary policy to provide UM coverage for [plaintiffs].
So I won’t address those any further unless the Court has any questions or concerns.
THE COURT:
No, sir.
[[Image here]]
THE COURT:
Okay. Okay. I don’t believe, [counsel for Hudson], you filed anything?
[COUNSEL FOR HUDSON]:
No, Your Honor.
*412 After hearing argument from the parties, the trial court granted summary judgment in favor of Venture and Zurich, stating as follows: “The Court will grant the Motion for Summary Judgment. ... The Court earlier ruled in a prior Motion for Summary Judgment that Mr. Calvin Guidry, at the time of this accident, was not in the business of [Venture], Therefore, the policy provided by [Hudson] provides [UM] coverage.” The trial court signed a judgment on October 23, 2012, granting summary judgment in favor of Venture Rand Zurich and dismissing plaintiffs’ claims against them, with prejudice. No appeal was taken from this final judgment.
Plaintiffs amended their petition to add claims against Hudson for bad faith damages and penalties. Hudson filed a motion for partial summary judgment in January 2013, seeking dismissal of these claims, which the trial court granted. However, in response to plaintiffs’ writ application to this court, the trial court’s judgment was reversed. Guidry v. US Agencies, 2013-0780 (La.App. 1 Cir. 8/29/13), 2013 WL 12122516 (unpublished writ action). Hudson applied to the Louisiana Supreme Court for a supervisory writ, which was denied. Guidry v. US Agencies, 2013-2317 (La. 12/2/13), 126 So.3d 1288 (unpublished writ action).
In February 2014, Hudson filed an exception raising the objection of prescription asserting that regardless of whether coverage was owed under its policy, plaintiffs’ claims against Hudson were prescribed on their face. Hudson argued that plaintiffs’ suit against the Mousseaus and their liability insurer, USAgencies, could not serve to interrupt prescription as to Hudson because plaintiffs had voluntarily dismissed those defendants. Moreover, Hudson noted that the suit against Venture and Zurich did not act to interrupt prescription against it because the trial court had found that neither Venture nor Zurich furnished UM coverage to plaintiffs, “and therefore, neither Venture nor Zurich are solidary obligors to plaintiffs along with Hudson.” The trial court heard arguments on the prescription exception in July 2014, after which the trial court denied said exception. Hudson’s application for supervisory review to this court was unsuccessful. In denying Hudson’s writ application, a different panel of this court noted as follows: “WRIT DENIED ON THE SHOWING MADE. At the time of filing the amended petition against relator Hudson Insurance Company, two parties remained as allegedly viable solidary obli-gors based on the original petition for damages.” Guidry v. US Agencies, 2014-1348 (La. App. 1 Cir. 12/23/14) (unpublished writ action).
Thereafter, in February 2015, Hudson filed yet another motion for summary judgment asserting no UM coverage. Referring to new facts and evidence that had been discovered since the trial court first ruled on the coverage issue in 2010, Hudson argued Rthat summary judgment was appropriate and that all of plaintiffs’ claims against Hudson should be dismissed with prejudice, because plaintiffs were clearly in the business of Venture at the time of the accident. Hudson asserted that not only had Venture admitted same, both in written discovery and in deposition testimony, but that the lease in question between Venture and Denise referenced federal regulations that created a presumption that plaintiffs were in the business of their lessee, Venture. Hudson argued that plaintiffs had not and could not carry their burden of overcoming this presumption. Thus, Hudson maintained, the accident in question took place while plaintiffs were in the business of Venture, and coverage was afforded under the Zurich policy that Venture provided for plaintiffs.
*413 In response, plaintiffs filed an opposition and a cross-motion for summary judgment to preclude further litigation of coverage issues. Plaintiffs argued that the doctrines of res judicata and/or law of the case prohibited any further litigation regarding whether Hudson’s policy provided coverage for plaintiffs’ injuries. Following a hearing in July 2015, the trial court denied Hudson’s motion for summary judgment as to the coverage issue, accepting plaintiffs’ law of the case argument. The trial court also denied Hudson’s motion for partial summary judgment as to the issue of bad faith and penalties. Plaintiffs’ cross-motion for summary judgment was continued to a later date.
Thereafter, plaintiffs filed a “Motion for Summary Judgment or, in the Alternative, Motion for Declaratory Judgment Regarding Hudson’s Waiver of Rights,” further asserting their position that Hudson was estopped from denying coverage. Plaintiffs’ motions were heard in January 2016, at which time the trial court heard arguments from the parties. Ruling from the bench, the trial court granted plaintiffs’ two motions for summary judgment, accepting all of plaintiffs’ estoppel arguments, and ordered Hudson to provide UM coverage.
The trial court signed a written judgment on February 10, 2016, which provided, in pertinent part, as follows:
On January 11, 2016, the following motions came for hearing before this Court: Plaintiffs’ Cross-Motion for Summary Judgment to Preclude Further Litigation of Coverage Issues and Plaintiffs’ Motion for 17Summary Judgment or in the Alternative, Declaratory Judgment Regarding Hudson’s Waiver of Rights.
[[Image here]]
The court, after considering the law and argument of counsel, rendered the following judgment, to-wit:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs’ Cross-Motion for Summary Judgment to Preclude Further Litigation of Coverage Issues is GRANTED;
IT IS FURTHER ORDERED that Plaintiffs’ Motion for Summary Judgment or in the Alternative, Declaratory Judgment Regarding Hudson’s Waiver of Rights is GRANTED;
IT IS FURTHER ORDERED that Hudson owes UM insurance coverage to plaintiffs, and, further, finding no just reason for delay and that an immediate appeal is in the interests of judicial economy, that this Judgment is designated as a final, appealable judgment under La. Code. Civ. P. Art. 1915(B).
Hudson appeals from this judgment, assigning the following specifications of error:
1. The district court erred when it found that “law of the case” attached to the denial of a motion for summary judgment and writ application, and thus es-topped Hudson from relying on newly discovered facts to show that coverage was excluded under its policy.
2. The district court erred in finding that [a] UM tender results in waiver of an insurer’s right to contest coverage, disregarding this Court’s clear precedent to the contrary.
3. The district court erred when, disregarding Federal Motor Carrier Safety Administration (“FMCSA”) regulations governing the relationship between independent contractors and motor carriers, it found coverage under a non-trucking policy that plainly excludes coverage when the contractor’s truck is “in the business” of the company.
4. The district court erred in granting summary judgment against Hudson when the plaintiffs’ claims against Hud *414 son were prescribed on their face and
(a) plaintiffs had voluntarily dismissed the only defendants with whom Hudson was alleged to be a solidary obligor and
(b) plaintiffs did not establish that their failure to timely file suit was excused under the doctrine of contra non valen-tem.
LAW OP THE CASE/SUMMARY JUDGMENT
(Assignment of Error No. 1)
The “law of the case” doctrine is a discretionary guide that relates to (a) the binding force of a trial judge’s ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court Isordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Louisiana Land and Exploration Co. v. Verdin, 95-2579, pp. 3-4 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65, writ denied, 96-2629 (La. 12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.CL 1696, 137 L.Ed.2d 822 (1997). It applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. Jones v. McDonald’s Corp., 97-2287, p. 4 (La.App. 1 Cir. 11/6/98), 723 So.2d 492, 494 (citing Brumfield v. Dyson, 418 So.2d 21, 23 (La.App. 1 Cir.), writ denied, 422 So.2d 162 (La. 1982)). The reasons for the doctrine are to avoid re-litigation of the same issue, to promote consistency of result in the same litigation, and to promote efficiency and fairness to the parties by affording a single opportunity for the argument and decision of the matter at issue. Louisiana Land and Exploration Co., 95-2579 at 4, 681 So.2d at 65.
The law of the case doctrine does not apply to a trial court’s rulings on interlocutory issues. Land v. Vidrine, 2010-1342, p. 9 (La. 3/15/11), 62 So.3d 36, 42. A judgment denying a motion for summary judgment is interlocutory in nature. See La. Code Civ. P. Art. 968. Prior to final judgment, a trial judge may, at his discretion, change the substance or the result of interlocutory rulings. Ryan v. State Farm Mutual Auto. Ins. Co., 2010-0961, p. 4 (La.App. 1 Cir. 12/22/10), 68 So.3d 563, 566, writ denied, 2011-0172 (La. 4/1/11), 60 So.3d 1250.
When an appellate court (or the supreme court) considers arguments made in supervisory writ applications or responses to such applications, the court’s disposition on the issue considered usually becomes law of the case, foreclosing re-litigation of that issue either at the trial court on remand or in the appellate court on a later appeal. Spruell v. Dudley, 2006-0015, p. 5 (La.App. 1 Cir. 12/28/06), 951 So.2d 339, 342, writ denied, 2007-0196 (La. 3/23/07), 951 So.2d 1106 (emphasis added) (citing Louisiana Land and Exploration Co., 95-2579 at 4, 681 So.2d at 65). However, the denial of a writ application creates a different situation. A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question |9when an appeal is taken from a final judgment. Cotton v. Gaylord Container, 96-1958, p. 5 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 763, writ denied, 97-0800 (La. 4/8/97), 693 So.2d 147.
Here, after considering the arguments of counsel, the trial court found that Judge Simpson’s prior ruling on the coverage issue was the law of the case. The trial court noted as follows:
With that being said, we can sit here and argue about res judicata. The Court doesn’t feel that this fits squarely within *415 the definition of res judicata. But in the Court’s opinion, it clearly fits into law of the case because the Court believes that it’s still the law of the case. And if this Court were presented with the exact same issues, the Court would agree with Judge Simpson. And the reason I state that is I believe that the plaintiffs’ motion to preclude further litigation is, in essence, a request for summary judgment on the issue of coverage.
So with that being said, the Court would grant the plaintiffs’ cross-motion for summary judgment to preclude further litigation on coverage issues. And the Court finds that the earlier analysis by Judge Simpson in his reasons on February 24, 2011, are correct and still the law of the case. And that establishes that the plaintiff was ... not in the business of Venture.... And that the bobtail coverage did in fact apply—the Hudson policy.
On appeal, Hudson argues the trial court erred in applying the law of the case doctrine to the trial court’s February 24, 2011 judgment denying its motion for summary judgment on the coverage issue, and, on this basis, refusing to consider Hudson’s new evidence demonstrating that plaintiffs were in the business of Venture at the time of the accident. We agree with Hudson that the trial court erred in applying the law of the case doctrine based on the facts and circumstances herein. The February 24, 2011 ruling of the trial court denying Hudson’s motion for summary judgment was an interlocutory ruling. As such, it was improper for the trial court to give the ruling the binding effect of a final judgment under the law of the case doctrine. Starkey v. Starkey, 2013-0166, p. 7 (La.App. 1 Cir. 8/6/13), 122 So.3d 579, 583-584. However, our inquiry does not end here.
We also find no merit to Hudson’s argument that the trial court did not consider its evidence in granting plaintiffs’ cross-motion for summary judgment on the coverage 110issue. At the conclusion of the hearing, the trial court noted its intent to consider everything submitted by the parties in makings its decision:
THE COURT:
Counsel, is there anything else that we need to address? I know we had motions to strike these additional, but I’m not striking anything. I considered everything. It’s my—it’s simply my decision that these additional evidences (sic) and depositions and affidavits are not material—
[COUNSEL FOR HUDSON:]
Yes, sir.
THE COURT:
—are not relevant to the issue.
[COUNSEL FOR PLAINTIFFS:]
Thank you, Your Honor.
[COUNSEL FOR HUDSON:!
Thank you, Judge. Can we just make sure the record is clear that we’re moving to admit into evidence the exhibits attached to our—
THE COURT:
Yes.
[COUNSEL FOR HUDSON:]
—motion for summary judgment, our oppositions to motion for summary judgment—
THE COURT:
Right.
[COUNSEL FOR HUDSON:]
—our supplemental oppositions [to] motion for summary judgment. I know there’s been a lot of briefing including the supplemental memorandum of opposition of cross-summary—cross-motion for summary judgment filed October 27, 2015.
*416 THE COURT:
I think everything has been filed timely as per our last cutoff.
[COUNSEL FOR PLAINTIFFS:]
Yes, Your Honor. And I would move to admit all my evidence attached to every exhibit—
|UTHE COURT:
Right.
[COUNSEL FOR PLAINTIFFS:]
—every exhibit attached to every motion, the cross-motion—
THE COURT:
Right.
[COUNSEL FOR PLAINTIFFS:]
—the waiver, the supplemental motion also in this case. And I maintain my objections to their exhibits that are contained in my memorandum.
THE COURT:
Well, the Court’s going to deny those objections. As I stated, I wanted to consider everything.
The record reveals that the trial court thoroughly considered all of the exhibits submitted by both parties in ruling on the coverage issue. Thus, we must consider whether summary judgment in plaintiffs’ favor was appropriate in this case, ie., is there a genuine issue of material fact as to whether plaintiffs were in the business of Venture at the time of the accident,
After adequate discovery, a motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. Art. 966(B)(2) & (C)(1).[4] The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of nondomestic civil actions. La. Code Civ. P. Art. 966(A)(2).
The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the subject matter of |12the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. La. Code Civ. P. Art. 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. Code Civ. P. Art. 966(C)(2). If the nonmov-ing party fails to make this requisite showing, there is no genuine issue of material fact, and summary judgment should be granted. La. Code Civ. P. Art. 966(C)(2). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse party’s claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. LeBlanc v. Bouchereau Oil Co., Inc., 2008-2064, p. 4 (La.App. 1 Cir. 5/8/09), 15 So.3d 152, 155, writ denied, 2009-1624 (La. 10/16/09), 19 So.3d 481.
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines v. Garrett, 2004-0806, p. 1 (La. 6/25/04), 876 So.2d *417 764, 765 (per curiam). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050 (per curiam).
In Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751, the Louisiana Supreme Court set forth the following parameters for determining whether an issue is genuine or a fact is material.
A “genuine.issue” is a “triable issue.” More precisely, “[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes.” In determining whether an issue is “genuine,” courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. “Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact.”
|13A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. “[F]acts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.” Simply put, a “material” fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. [Citations omitted.]
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. East Tangipahoa Development Company, LLC v. Bedico Junction, LLC, 2008-1262, p. 8 (La.App. 1 Cir. 12/23/08), 5 So.3d 238, 243-244, writ denied, 2009-0166 (La. 3/27/09), 5 So.3d 146. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Pumphrey v. Harris, 2012-0405, p. 5 (La.App. 1 Cir. 11/2/12), 111 So.3d 86, 89.
Concerning the issue of whether plaintiffs were in the business of Venture at the time of the accident, the trial court made the following conclusions after considering the evidence:
All right, thank you, Counsel. An important factor or important issue in the motions today are whether or not this new, quote/unquote, evidence—and I’ll say that because I’m not going to classify it yet as factual evidence or opinion evidence because I’m not quite sure what it is. But regardless, the issue of whether or not the fuel surcharge is based on round-trip mileage, in this Court’s opinion, as so far as it affects this case, is nothing more than some evidence of generally how it’s computed in the business. To put it succinctly, the Court does not feel that that evidence is relevant or material to the determination already made in this Court -by Judge Simpson. That determination was based upon fact in the record of what was contained in this contract.
The Court feels that the judgment or the reasons for judgment, given by Judge Simpson on February 24, 2011, are correct. And are still correct today based upon the factors and the' analysis performed by Judge Simpson under the Leblanc v. Bailey case. That case does *418 not weight [sic] the different factors. It doesn’t say which one is more important than the other. And it also said that this is not a “bright line” rule. We’re just given examples on how to perform the analysis.
In short, this Court just doesn’t feel that the testimony of Mr. Touchet constitutes anything more than opinion evidence of how generally the fuel surcharges are calculated. That may very well be correct, and probably is correct, in general. But that’s nothing more than a man 114figuring out the average cost or figuring out your cost of doing business, which is always passed along to the ultimate consumers whether it’s the companies who hire the truckers, etc.
That, in and of itself, doesn’t answer the question as to whether he continues to be in the business for that particular company. It’s simply a manner of figuring out the mileage. This Court figures—this Court finds that what is material in this matter is what was in the contract. And the contract clearly did not provide for the return mileage.
We have thoroughly reviewed the record before us and agree with the trial court’s finding that plaintiffs were not in the business of Venture at the time of the accident. A contract has the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. See Freeport-McMoran, Inc. v. Transcontinental Gas Pipe Line Corp., 2004-0031, p. 6 (La.App. 1 Cir. 10/14/05), 924 So.2d 207, 212, writ denied, 2005-2358 (La. 3/31/06), 925 So.2d 1256 (citing Spohrer v. Spohrer, 610 So.2d 849, 851-853 (La. App. 1 Cir. 1992)). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. Civ. Code Art. 2046.
Pursuant to the clear and unambiguous terms of the Service Agreement, plaintiffs were to be paid a percentage of the line haul revenue, which by its own definition only included mileage incurred from the point of pick up to the point of delivery. And, as noted by the trial court in its oral reasons for judgment, the testimony of Jimmy Touchet amounted to mere opinion evidence of how fuel surcharges are calculated and was “nothing more than a man figuring the average cost or figuring out your cost of doing business, which is always passed along to the ultimate consumers whether it’s the companies who hire the truckers, etc.” This evidence cannot and does not change what the Service Agreement provided concerning compensation and mileage; there was no provision in the agreement whereby Venture would pay plaintiffs for return mileage.[5]
|1SDQ FEDERAL REGULATIONS CREATE A REBUTTABLE PRESUMPTION OF “IN THE BUSINESS”?
(Assignment of Error No. 3)
Hudson further asserts that federal regulations impose a rebuttable presumption that plaintiffs were in the business of Venture at the time of the accident and that plaintiffs faded to rebut this presumption. Citing 49 C.F.R. § 376.12 and federal jurisprudence, Hudson maintains that to ensure that the motor carrier cannot insulate itself from liability to injured persons, federal regulations require a motor carrier to assume “exclusive control” *419 and “complete responsibility” for its leased vehicles during the duration of the lease. See Bays v. Summitt Trucking, LLC, 691 F.Supp.2d 725 (W.D. Ky. 2010); Shinn v. Greeness, 218 F.R.D. 478 (M.D.N.C. 2003). Hudson posits that if the independent contractor is using the leased vehicle for a purely personal reason having nothing to do with the motor carrier, then the motor carrier can rebut the presumption by proving that it did not have exclusive control at that point.
In response, plaintiffs argue that 49 C.F.R. § 376.12 creates a presumption regarding the liability of the motor carrier for the negligent actions of the independent contractor when an innocent third party is injured by the actions of the motor carrier’s driver. Thus, plaintiffs assert, “no presumptions would apply to [plaintiffs] because they are not third parties seeking to impute their own liability as the truck driver/owner onto the carrier. In other words, they are not the plaintiffs the presumption was intended to protect.” We agree. This presumption, which actually applies to Interstate Commerce Commission regulations in general, “was intended for the benefit of the public at large, not for the driver of the leased vehicle.” Roseberry v. Balboa Ins. Co., 90 Ohio App.3d 33, 627 N.E.2d 1062, 1064 (1993). We find no merit to this assignment of error.
HUDSON’S UM TENDER AND WAIVER OF RIGHT TO CONTEST COVERAGE
(Assignment of Error No. 2)
In granting plaintiffs’ cross-motion for summary judgment, the trial court noted, in pertinent part, as follows:
Counsel supplemented the record with additional motions to ask for the same result based upon the waiver argument—the waiver of rights. And alternatively as a basis, the Court feels, in essence, that’s the same motion. He was simply providing additional grounds. So the Court, | ^alternatively, believes that that, too, is a valid basis for granting the motion as stated earlier. And I’m going to—for my reasons, I agree with plaintiffs’ memorandum regarding the issue of waiver of rights that he filed on October 12, 2015. And also based on the reasoning stated in the case law, Emery v. Progressive Casualty, (La.[App.] 1 Cir. [9/10/10]), 49 [So.3d] 17, and Steptore v. Masco Construction which was [a] Supreme Court case, 643 So.2d 1213.
The Court feels that all elements of the waiver of rights doctrine are met in this case. The Court clearly feels that while that’s not squarely law of the case—I mean, it kind of falls within the same arguments and the same definitions that—it was clear. When the previous rulings were made by Judge Simpson in this matter, that letting one company out leaves the other company in, there could be no other interpretation. The Court feels that the parties should have been on notice that those particular rulings should have been addressed, should have been appealed. I’m not prepared to state that the failure to specifically file a writ on one issue precludes the right to apply this Waiver of Rights Doctrine. The Court feels in this particular case it is properly applied, so that’s just an alternative reasoning for the granting of plaintiffs’ cross-motion for summary judgment.
Hudson argues that the trial court erred in finding that its UM tender resulted in a waiver of its right to contest coverage. Citing this court’s decision in Haydel v. State Farm Ins. Co., 2005-1400, pp. 6-8 (La.App. 1 Cir. 5/5/06), 935 So.2d 171, 174-3.75, writ denied, 2006-1307 (La. 9/22/06), 937 So.2d 385, Hudson maintains that UM *420 carriers are encouraged to make unconditional tenders to provide for a claimants’ injuries and that plaintiffs waiver arguments fails. Thus, Hudson asserts, on this basis alone, the trial court’s judgment should be reversed. To the contrary, plaintiffs assert that Hudson waived its right to raise coverage defenses when it made its UM tender without any reservation of rights. See Steptore v. Masco Const. Co., Inc., 93-2064, p. 4 (La. 8/18/94), 643 So.2d 1213, 1216 (“Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.”)
While we agree with Hudson that the trial court was in error in equating its UM tender with a waiver of its right to contest coverage, we do not believe that this error warrants reversal. As previously discussed, the trial court considered the waiver argument to be an alternative basis for granting. plaintiffs’ cross-motion for- summary judgment on the coverage issue. And, it is clear from the record that the trial court 117thoroughly considered all of the exhibits submitted by both parties in ruling that plaintiffs were not in the business of Venture at the time of the accident such that coverage under the Hudson policy was proper. This assignment of error is without merit.
PRESCRIPTION
(Assignment of Error No. 4)
The denial of a peremptory exception raising the objection of prescription is interlocutory in nature and generally not appealable; however, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment appealed from. La. Code Civ. P. Arts. 1841 and 2083; Bezou v. Bezou, 2015-1879, p. 6 (La.App. 1 Cir. 9/16/16), 203 So.3d 488, 493, writ denied, 2016-1869 (La. 12/5/16), 210 So.3d 814.
As previously noted, the “law of the case” doctrine does not bar us from reviewing this court’s previous writ denial as to the trial court’s denial of Hudson’s peremptory exceptions pleading prescription. However, the denial of a writ application creates a different situation. A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment. Pence v. Austin, 2015-1371, pp. 6-7 (La.App. 1 Cir. 2/26/16), 191 So.3d 608, 613-614.
Louisiana Civil Code Article 3492 provides that delictual actions are subject to a liberative prescription of one year, which commences to run from the day injury or damage is sustained. See also Raborn v. Albea, 2013-0633, p. 6 (La.App. 1 Cir. 4/16/14), 144 So.3d 1066, 1070-1071, writ denied, 2014-1239 (La. 9/26/14),’ 149 So.3d 264. However, actions against UM insurers prescribe two years from the date of the accident absent interruption of the prescriptive period. La. R.S. 9:5629.
The objection of prescription may be raised- by a peremptory exception. La. Code Civ. P. Art. 927(A)(1). Although evidence may be introduced to support or 118controvert any objection pleaded by the peremptory exception, in the absence of evidence, an objection of prescription must be decided upon facts alleged in the petition with all allegations accepted as true. La. Code Civ. P. Art. 931; Cichirillo v. Avondale Industries, Inc., 2004-2894, p. 5 (La. 11/29/05), 917 So.2d 424, 428. When *421 prescription is raised with evidence being introduced at the hearing on the exception, the trial court’s findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review. London Towne Condominium Homeowner’s Ass’n v. London Towne Co., 2006-401, p. 4 (La. 10/17/06), 989 So.2d 1227, 1231. Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). But, in a case involving no dispute regarding material facts—only the determination of a legal issue—a reviewing court must review the issue de novo, according the trial court’s legal conclusions no deference. Cawley v. National Fire & Marine Ins. Co., 2010-2095, p. 3 (La.App. 1 Cir. 5/6/11), 65 So.3d 235, 237.
Prescription is interrupted by the filing of suit in a court of competent jurisdiction. La. Civ. Code Art. 3462. The interruption of prescription against one solidary obligor is effective against all soli-dary obligors. La. Civ. Code Arts. 1799 and 3503. Louisiana Civil Code Article 3463 provides that interruption of prescription resulting from the filing of suit “is considered never to have occurred if the plaintiff abandons, voluntarily dismisses the action at any time either before the defendant has made any appearance of record or thereafter, or fails to prosecute the suit at trial.” Generally, the burden of proving an action is prescribed lies with the party pleading prescription. Hogg v. Chevron USA, Inc., 2009-2632, p. 7 (La. 7/6/10), 45 So.3d 991, 998. An exception to this general rule exists when the face of the petition shows that the cause of action is prescribed, in which case the burden shifts to the plaintiff to prove that prescription was interrupted or suspended. Bailey v. Khoury, 2004-0620, p. 9 (La. 1/20/05), 891 So.2d 1268, 1275. Additionally, if the plaintiffs basis for claiming interruption of | ^prescription is solidary liability between two or more parties, then the plaintiff bears the burden of proving that solidarity exists. Younger v. Marshall Industries, Inc., 618 So.2d 866, 869 (La. 1993).
In this case, plaintiffs’ supplemental and amended petition against Hudson was filed more than two years after the accident and is prescribed on its face. Thus, plaintiffs bore the burden of proving that prescription against Hudson was either interrupted or suspended. As to this issue, plaintiffs argue that a solidary relationship existed between Patricia Mousseau and Hudson such that the timely filed action against the Mousseaus interrupted prescription against Hudson. In support of this contention, plaintiffs rely on Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 579 (La. 1982),[6] wherein the Louisiana Supreme Court held that a timely filed lawsuit by an injured victim and her husband against the tortfeasors interrupted prescription against the plaintiffs’ UM carrier, because the tortfeasors and the plaintiffs’ UM carrier were solidarily liable pursuant to the Louisiana Civil Code definition of *422 solidary obligations for obligors. As to the settlement with the Mousseaus and USA-gencies, plaintiffs maintain that pursuant to Pierce v. Foster Wheeler Constructors, Inc., 2004-0333, pp. 7-8 (La.App. 1 Cir. 2/16/05), 906 So.2d 605, 610, a judgment of dismissal on the basis of a settlement agreement does not constitute a “voluntary dismissal” within the meaning of Article 3463. In the alternative, plaintiffs assert that the doctrine of contra, non va-lentón prevented prescription from running against them.
On the other hand, Hudson argues that interruption of prescription is considered never to have occurred because plaintiffs voluntarily dismissed their claims against the Mousseaus and USAgencies. While acknowledging that the dismissal entered in this case was with prejudice and pursuant to a settlement agreement, Hudson maintains lanthat the Louisiana Supreme Court’s holding in Sims v. American Ins. Co., 2012-0204 (La. 10/16/12), 101 So.3d 1, supports its position that a dismissal with prejudice is a voluntary dismissal. Hudson asserts that given the Louisiana Supreme Court’s decision in Sims, this court’s decision in Pierce has been implicitly overruled.
We find no merit to Hudson’s argument that plaintiffs’ claims are prescribed. Hudson’s interpretation of Sims is not persuasive. First, we note that Pierce remains the law of this circuit and has been followed by our brethren of the second circuit as well. See Boyd v. Farmers Ins. Exchange, 42, 701, pp. 5-8 (La.App. 2 Cir. 12/5/07), 973 So.2d 154, 157-159; Dark v. Marshall, 41, 711, pp. 7-8 (La.App. 2 Cir. 12/13/06), 945 So.2d 246, 250 (noting the dismissal of a suit with prejudice after both parties to the action have settled the dispute cannot be characterized as a voluntary and unqualified dismissal by the plaintiff alone). Second, a clear reading of the Louisiana Supreme Court’s decision in Sims actually reveals the court’s intent to distinguish the facts of Sims from those in Pierce.
The Sims suit involved an employee’s intentional tort action against his employers for brain cancer that the employee alleged was caused by workplace exposure. Sims, 2012-0204 at 1, 101 So.3d at 3. In response to a writ of certiorari, the Louisiana Supreme Court held that pursuant to the plain language of Article 3463, a voluntary dismissal of a suit filed in federal court failed to interrupt prescription for a later suit filed in state court. Id., 2012-0204 at 11, 101 So.3d at 8. The Sims court noted that unlike in Pierce, the dismissal in Sims was not the result of any settlement agreement. Id., 2012-0204 at 9, 101 So.3d at 7.
Accordingly, because the instant case involved a settlement whereby plaintiffs reserved their rights to pursue claims against other parties, named or unnamed, the dismissal of the claims against the Mousseaus and USAgencies did not qualify as a voluntary dismissal pursuant to Article 3463. Prescription was interrupted against |⅞1 Hudson by the timely filing of the original claim against the Mousseaus and USAgencies.[7] Plaintiffs’ claims against Hudson are not prescribed.
CONCLUSION
For the above and foregoing reasons, we affirm the February 10, 2016 judgment of the trial court. All costs associated with *423 this appeal are assessed against defendant insurer, Hudson Insurance Company.
AFFIRMED.

. Plaintiffs erroneously referred to Hudson in their petition as "Hudson Insurance Group.”

. The Hudson policy contains an exclusion entitled "Truckers-Insurance For Non-Trucking Use CA 23 09 02 99,” which includes the following language:
Liability Coverage for a covered "auto” described in the Schedule is changed as follows:
1. The following exclusions are added:
This insurance does not apply to:
a. A covered "auto” while used to carry property in any business.
b. A covered “auto” while used in the business of anyone to whom the "auto” is rented.
2. Who is An Insured does not include anyone engaged in the business of transporting property by “auto” for hire who is liable for your conduct.

. The summary judgment law was recently amended by 2015 La. Acts No. 422, but the provisions of Act 422 do "not apply to any motion for summary judgment pending adjudication or appeal on [January 1, 2016]."

. We note Hudson raised the issues that Venture’s manual stated it will provide for return trips and that Venture’s admissions stated that the Guidrys were doing Venture’s business when the accident occurred; however, we deem that insufficient evidence to create a material issue of fact.

. At the pertinent time in Hoefly, the definition concerning solidary obligations for obli-gors was set forth in La. Civ. Code Art. 2091. However, the current definition is set forth in Article 1794 and provides that "[a]n obligation is solidary for the obligors when each obligor is liable for the whole performance” and when "[a] performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.” Article 1794 “restates the principle contained in [former La. Civ. Code Art.] 2091 ... [and] does not change the law.” La. Civ. Code Art. 1794, Revision Comment—1984. Accordingly, the analysis in Hoefly regarding solidary obligations for obligors remains applicable.

. Having found that plaintiffs’ claims against Hudson are not prescribed, we pretermit discussion of contra non valentem as it is not necessary to the resolution of the prescription issue.