# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2019 CA 0965

### GERALDINE WATKINS

### VERSUS

### MITCHELL A. PIERCE, JR., DMD, AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA

**Judgment Rendered:**     JUL 0 8 2020

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. C610571

Honorable Timothy E. Kelley, Judge Presiding

* * * * * *

| | |
|---|---|
| J. Michael Daly, Jr. | Counsel for Plaintiff/Appellant |
| Bradford H. Walker | Geraldine Watkins |
| Leonard J. Cline | |
| Metairie, Louisiana | |
| and | |
| Michael T. Bell | |
| Laplace, Louisiana | |
| | |
| Marc D. Moroux | Counsel for Defendants/Appellees |
| Mason C. Johnson | Mitchell A. Pierce, Jr., DMD, and |
| Sarah E. Stephens | National Union Fire Insurance |
| Lafayette, Louisiana | Company of Pittsburgh, PA |

* * * * * *

BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.

_JEW_
_Welch J. concurs in part and dissents in part and assigns reasons_

**McCLENDON, J.**

In this appeal, a dental patient challenges two judgments of the trial court that granted the defendants' motions for summary judgment and dismissed her claims with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On March 26, 2012, Geraldine Watkins filed a Petition for Damages against Mitchell A. Pierce, Jr., D.M.D. and National Union Fire Insurance Company of Pittsburgh, PA, Dr. Pierce's malpractice insurer. Ms. Watkins asserted that on March 24, 2011, she went to Dr. Pierce's office to have implants placed in the left side of her mouth and that during the procedure Dr. Pierce hit a nerve, causing extensive bleeding and nerve damage. Ms. Watkins alleged that as a result of Dr. Pierce's failure to use the appropriate standard of care required by dentists, she suffered serious injuries and damages.[1] Thereafter, Ms. Watkins also claimed that Dr. Pierce failed to provide her with the necessary information required for her to give an informed consent regarding her dental treatment.

The defendants answered the petition, generally denying the allegations, and subsequently filed a motion for summary judgment. Following a hearing, the trial court partially granted the motion for summary judgment, finding that there was no genuine issue of material fact regarding any breach of the applicable standard of care. However, the trial court denied the motion for summary judgment based on the lack of informed consent. On November 15, 2017, the trial court signed a judgment, granting in part and denying in part the motion for summary judgment. The judgment dismissed all of Ms. Watkins' claims against the defendants with prejudice for malpractice based on a breach of the standard of care. However, the judgment also denied the defendants' motion to dismiss the remainder of Ms. Watkins' claims based on the lack of informed consent.[2]

---

[1] Ms. Watkins asserted in the joint Pretrial Order that Dr. Pierce is not a qualified health care provider.

[2] In denying the motion for summary judgment, without prejudice, as to the issue of informed consent, the trial court's judgment acknowledged the defendants' "rights to reassert the Motion at a later date."

Subsequently, cross motions for summary judgment were filed as to the informed consent issue. At the conclusion of the hearing, the trial court granted the defendants' motion for summary judgment and denied Ms. Watkins' motion for summary judgment. The trial court signed its judgment on May 1, 2019, dismissing with prejudice the claims of Ms. Watkins based on the lack of informed consent. The trial court also identified the judgment as a final judgment as it disposed of the remaining claims of Ms. Watkins. Ms. Watkins now appeals the November 15, 2017 and the May 1, 2019 judgments.[3]

## DISCUSSION

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966A(3). The burden of proof on motion for summary judgment rests on the mover. However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action, or defense. Instead, the mover must point out the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966D(1).

The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art.

---

[3] The grant of a partial summary judgment as to less than all the claims is a judgment that is interlocutory in nature and generally not appealable unless designated by the trial court a final judgment after an express determination that there is no just reason for delay. See LSA-C.C.P. arts. 1915B and 966E; **Labarre v. Texas Brine Company, LLC**, 17-0638 (La.App. 1 Cir. 10/31/17), (unpublished writ action) (2017 WL 4950033). In this matter, the trial court did not designate the November 15, 2017 judgment as a final judgment pursuant to LSA-C.C.P. art. 1915B. However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment appealed from. See LSA-C.C.P. arts. 1841 and 2083; **Guidry v. USAgencies Casualty Insurance Company, Inc.**, 16-0562 (La.App. 1 Cir. 2/16/17), 213 So.3d 406, 420, writ denied, 17-0601 (La. 5/26/17), 221 So.3d 81. Accordingly, we will consider the granting of the partial summary judgment on November 15, 2017, as well as the May 1, 2019 summary judgment that dismissed the remainder of Ms. Watkins' claims.

966A(2). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C.,** 17-1088 (La.App. 1 Cir. 3/15/18), 244 So.3d 441, 444, writ denied, 18-0583 (La. 6/1/18), 243 So.3d 1062. Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. **Thompson,** 244 So.3d at 445. However, mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. **Guillory v. The Chimes,** 17-0479 (La.App. 1 Cir. 12/21/17), 240 So.3d 193, 195. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Talbert v. Restoration Hardware, Inc.,** 17-0986 (La.App. 1 Cir. 5/31/18), 251 So.3d 532, 535, writ denied, 18-1102 (La. 10/15/18), 253 So.3d 1304.

Breach of Standard of Care

The substantive law applicable to Ms. Watkins' medical malpractice claim is set forth in LSA-R.S. 9:2794. To establish a claim for medical malpractice, a plaintiff must prove the following by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. LSA-R.S. 9:2794A; **Schultz v. Guoth,** 10-0343 (La. 1/19/11), 57 So.3d 1002, 1006. Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. **Schultz,** 57 So.3d at 1006-07; **Cryer v. Tangi Pines Nursing Center,** 17-0697 (La.App. 1 Cir. 12/21/17), 240 So.3d 975, 978.

In their first motion for summary judgment, the defendants argued that Ms. Watkins had not presented any evidence, via expert opinion or otherwise, that supported her allegations that Dr. Pierce's treatment breached the applicable standard

4

of care.[4] However, Ms. Watkins contended that the choice of the Ramus frame implant was a breach of the applicable standard of care. She also asserted that she was given local anesthesia, rather than general, which was another breach of the appropriate standard of care.

In support of their motion, the defendants submitted excerpts from the depositions of the three medical experts identified by Ms. Watkins: Dr. Edward J. Boos, Dr. Randall L. Wilk, and Dr. Charles P. Silvia, Jr. Dr. Boos is an oral surgeon who examined Ms. Watkins not long after the implant surgery performed by Dr. Pierce for evaluation of her mandible for possible implant restoration. Dr. Boos testified in his deposition that he first obtained a history from Ms. Watkins, who informed him that she jumped during the implant procedure, suffered excessive bleeding, and now has a numb lip. She also stated that the procedure was not completed and the implant was removed. During his deposition, Dr. Boos was asked:

> Q. Okay. Doctor, do you have an opinion as to whether or not anything that Dr. Pierce did in his examination, in his selection, in his recommendations, in his procedure and his aftercare that breached the standard of care applicable to anything that he did?
>
> A. I have nothing to indicate that.

Dr. Wilk, a physician and dentist, also evaluated, but did not treat, Ms. Watkins. Dr. Wilk testified that Ms. Watkins had an atrophic mandible and was having problems with her dentures prior to seeing Dr. Pierce. Although Dr. Wilk indicated that other options besides the Ramus frame implant were available that "would accomplish the goal with less, less risks and with equivalent or better outcomes," he found no breach of any standard of care. Dr. Wilk was asked:

> Q. So let me ask the question this way and to be as blunt as I can: Did Dr. Pierce's choice of the Ramus [f]rame in Ms. Watkins' case breach any standard of care?
>
> A. I don't believe any standard of care is breached by selecting that particular implant system.
>
> Q. And do you have any opinion on anything else that Dr. Pierce may have done or did not do which may have breached the standard of care in Ms. Watkins' case?

---

[4] As previously stated, the defendants also raised the issue of informed consent in their motion.

5

A. Like all surgical procedures, that's the ... you can have untoward events that occur. And I believe that ... in Ms. Watkins' situation, and during the course of the treatment that an unfortunate event did occur.

Q. And do you recognize, based upon your vast experience and education and training, that just because an untoward event happens, does not necessarily indicate the existence of malpractice or a breach of a standard of care?

A. That is correct

Dr. Silvia, another oral surgeon, was of the opinion that the Ramus frame implant, although still used, is not the best option in treating an atrophic mandible. He testified that it is "old technology" and did not believe that "it's the right way to treat things." However, he also attested that "there's guys that still do them and swear by them." When discussing the anesthesia used, Dr. Silvia testified that "patients can move [when] under local anesthetic," and he would have used intravenous (IV) sedation for such an extensive and invasive procedure, as it is less likely for patients to jump and move when they are sedated. He was then asked:

Q. What is the standard of care for that?

A. There's no standard of care on that. You know, you could do local or you can do IV sedation. I'd prefer to have the patient comfortable and not remember me ... using the anesthetics that I use. I prefer to have them sedated so they don't move.

* * *

A. What happened to her could have happened to anybody. It's just ... who's doing that kind of procedure. If I was doing a Ramus frame, ... I could have nicked the nerve, too.

Q. So –

A. But I don't think she would have moved had she been sedated.[5]

Thus, according to the defendants, they pointed out the absence of factual support for Ms. Watkins' claim of a breach of the appropriate standard of care. However, in opposition to the motion for summary judgment, Ms. Watkins contended that the testimony of the three medical experts established that the degree of care provided by the majority of dentists practicing in the area did not involve the use of the

---

[5] Dr. Silvia also stated, regarding the use of the Ramus frame implant: "In the standard of care I follow, it's not within my standard of care. But I know there's lots of guys out there, in the country, that say it is [the] standard of care. ... You may think it is, I think it's not. And you know – I don't know what other oral surgeons would say."

Ramus frame implant, because the results from such a procedure were less satisfactory, the risks and costs were greater, as were the risks of failure. Therefore, according to Ms. Watkins, she carried her burden of proof.

Although Ms. Watkins argued that the use of Ramus frame implants was no longer "the prevailing standard of care," we find that the expert testimony presented established that the selection of Ramus frame implants with the use of local anesthesia was within the applicable standard of care. Even though the testimony indicated it may not have been the preferred implant choice, no expert testimony has been presented by Ms. Watkins establishing that Dr. Pierce breached any applicable standard of care.

The defendants sufficiently pointed out the absence of an element essential to her claim, and the burden then shifted to Ms. Watkins to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the defendants were not entitled to judgment as a matter of law. Ms. Watkins failed to do so. Therefore, on our *de novo* review of the record, we find that the trial court's partial summary judgment in favor of the defendants regarding Ms. Watkins' claims as to the breach of the standard of care was proper.

Informed Consent

Louisiana Revised Statutes 40:1299.131 (currently LSA-R.S. 40:1161.1) set forth the requirements of informed consent for dental treatment.[6] According to the statute, a patient must be informed in general terms of the nature and purpose of the dental treatment and the possible associated risks, and the patient must be given an opportunity to ask questions concerning the dental treatment and have the questions answered in a satisfactory manner. See LSA-R.S. 40:1299.131B (currently LSA-R.S. 40:1161.1B). Where the informed consent is obtained in writing, it shall be conclusively presumed to be valid and effective, provided that it meets established criteria. See LSA-R.S. 40:1299.131C (currently LSA-R.S. 40:1161.1C). Additionally, a patient's consent to the dental treatment may be verbal, provided that it includes the matters set

---

[6] Louisiana Revised Statutes 40:1299.131 was redesignated as LSA-R.S. 40:1161.1 by 2015 La. Acts No. 84, effective June 2, 2015.

forth in LSA-R.S. 40:1299.131B. See LSA-R.S. 40:1299.131F (currently LSA-R.S. 40:1161.1F).

Further, in any action for damages based on the lack of informed consent, the plaintiff shall have the burden of proving, by a preponderance of the evidence, that (1) the defendant dentist failed to disclose the risks associated with the dental treatment, (2) such undisclosed risk did occur, and (3) a reasonably prudent person in the plaintiff's position would not have undergone the dental treatment had he or she been properly informed. See LSA-R.S. 40:1299.131E (currently LSA-R.S. 40:1161.1E).

In the present case, cross motions for summary judgment were filed by the parties regarding the issue of informed consent. Ms. Watkins argued that no informed consent existed with regard to the Ramus frame implant procedure and that the only consent form produced was for a mini-implant procedure, which was not performed herein. Additionally, Ms. Watkins denies that the consent form was signed by her. Moreover, she contends that Dr. Pierce neither discussed the risks associated with the use of the Ramus Frame implant, nor alternative options.

However, the defendants maintained that the consent form, signed by Ms. Watkins and submitted in support of their motion for summary judgment, was appropriate and satisfied all requirements under Louisiana law such that the presumption provided for in LSA-R.S. 40:1299.131C applied. They further contended that Dr. Pierce discussed with Ms. Watkins the nature and purpose of the implant procedure, including the risks and alternatives.

Therefore, we must first determine whether the written consent in this matter satisfied the requirements of LSA-R.S. 40:1299.131C, such that it is conclusively presumed to be valid and effective. Louisiana Revised Statutes 40:1299.131C provided:

> C. Where the informed consent for dental treatment is obtained in writing, no evidence shall be admissible to modify or limit the authorization for performance of the dental treatment or course of dental treatment and such informed consent, in the absence of clear and convincing proof that execution of the consent was induced by fraudulent misrepresentation of material facts by the involved dentist, shall be conclusively presumed to be valid and effective. Where such written consent is employed it shall also be conclusively presumed that the patient, or his representative, is able to communicate effectively in spoken or written English or in any other language in which the consent form is written and that the patient, or his representative, has understood the information disclosed in the

8

written consent, provided that such informed consent is documented in a writing which contains all of the following:

(1) Sets forth in general terms the nature and purpose of the dental treatment or course of dental treatment together with those risks described in Paragraph B(1) of this Section.

(2) Acknowledges that such disclosure of information has been made, that the patient has been given an opportunity to ask questions concerning such dental treatment or course of dental treatment, and that all questions asked have been answered in a satisfactory manner.

(3) Is signed by the patient for whom the dental treatment or course of dental treatment is to be performed, or if the patient for any reason lacks legal capacity to consent, by a representative of the patient as provided in the Louisiana Medical Consent Law, in R.S. 40:1299.50 et seq. [currently R.S. 40:1159.1 et seq.].

Further, LSA-R.S. 40:1299.131B(1) provided:

B. Notwithstanding any other law to the contrary, "informed consent" means consent to any dental treatment or course of dental treatment given by a patient:

(1) After the patient has been informed in general terms of the nature and purpose of the dental treatment or course of dental treatment and those risks of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of an organ or limb, or disfiguring scars, if any, associated with such dental treatment or course of dental treatment which would ordinarily have been disclosed under the same or similar circumstances by dentists with the same or similar training and experience[.]

In this case, although Ms. Watkins argues to the contrary, the signed consent form clearly indicates that she was informed and understood the purpose and the nature of the implant surgery procedure. The form also provided that alternatives to the treatment were explained and that Ms. Watkins was informed of the possible risks and complications involved with the implant surgery, drugs, and anesthesia. Additionally, possible complications were set forth therein, including the risks of "pain" and "[n]umbness of the lip, tongue, cheek, or teeth." The consent form further explained that some implants fail and that guarantees and assurances as to the outcome of results or surgery could not be made. The form also authorized the dental services, including implants, and provided for additional or alternative treatment, depending on what may become apparent during the contemplated treatment.

Considering the above, we find that the signed consent form complied with the requirements of LSA-R.S. 40:1299.131C. Therefore, no evidence shall be admissible to modify or limit the authorization for performance of the dental treatment, and such

9

written informed consent, in the absence of clear and convincing proof that execution of the consent was induced by fraudulent misrepresentation of material facts by the involved dentist, shall be conclusively presumed to be valid and effective. LSA-R.S. 40:1299.131C (currently LSA-R.S. 40:1161.1C). Ms. Watkins has made no allegations of fraudulent misrepresentation by Dr. Pierce, although she does argue that she did not sign the written consent. However, our review of the record shows that Ms. Watkins initially testified in her deposition that she signed the consent form. She then stated that she did not. Nevertheless, Ms. Watkins failed to present any evidence in support of this claim other than her inconsistent and self-serving testimony. This is not the type of factual support required to demonstrate that Ms. Watkins will be able to meet her burden of proof at trial. See LSA-C.C.P. art. 967B. Accordingly, we find that the consent form signed by Ms. Watkins is conclusively presumed to be valid and effective.[7]

Based on our thorough *de novo* review of the record, we find that Ms. Watkins did not present sufficient evidence to establish that she failed to give informed consent for the implant procedure performed by Dr. Pierce. Therefore, we find that the trial court correctly granted summary judgment in favor of the defendants on the issue of informed consent.

## CONCLUSION

For the foregoing reasons, we affirm the November 15, 2017 and May 1, 2018 judgments of the trial court in favor of the defendants, Mitchell A. Pierce, Jr., DMD, and National Union Fire Insurance Company of Pittsburg, PA. All costs of this appeal are assessed to the plaintiff, Geraldine Watkins.

**AFFIRMED.**

---

[7] Having found that the requirements of LSA-R.S. 40:1299.131C were met, we need not address any remaining arguments of Ms. Watkins.

GERALDINE WATKINS

VERSUS

MITCHELL A. PIERCE, JR. DMD, AND NATIONAL UNTION FIRE INSURANCE COMPANY OF PITTSBURG, PA

2019 CA 0965

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

**WELCH, J., concurs in part and dissents in part.**

I concur with the majority's affirmance of the trial court's November 15, 2017 judgment granting summary judgment on the issue of breach of the standard of care. I respectfully dissent, however, from the majority's affirmance of the trial court's May 1, 2019 judgment granting summary regarding the issue of informed consent. The plaintiff, Geraldine Watkins, stated during her deposition that she did not sign the consent form produced by Dr. Mitchell A. Pierce, Jr. DMD; nor was she informed by Dr. Pierce of the risks or alternatives to the Ramus frame implant. The plaintiff also provided the affidavit of Dr. Randall Wilk, who reviewed the consent form and found it failed to address the alternatives to the Ramus frame implant procedure, and the increased risks related to, the use of a Ramus frame implant as opposed to more conventional and accepted implants. Based on the consent form itself, the deposition testimony of Ms. Watkins, and the affidavit of Dr. Wilk, I find that genuine issues of material fact exist regarding whether Dr. Pierce obtained informed consent from Ms. Watkins for the Ramus frame implant procedure.

1